SSC—10

1  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
   anthony@counselonegroup.com
2  ALEXANDRIA KACHADOORIAN, Cal. Bar No. 240601
   alexandria@counselonegroup.com
3  JUSTIN KACHADOORIAN, Cal. Bar No. 260356
   justin@counselonegroup.com
4  COUNSELONE, P.C.
   9301 Wilshire Boulevard, Suite 650
5  Beverly Hills, California 90210
   Telephone: (310) 277-9945
6  Facsimile: (424) 277-3727

7  Attorneys for Plaintiff ASHLEY MAYS, on behalf of herself and
   all others similarly situated

8

**FILED**
Superior Court of California
County of Los Angeles

JUL 10 2020

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
        Steven Drew

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    FOR THE COUNTY OF LOS ANGELES

11

12

13  ASHLEY MAYS, on behalf of herself and       Case No.  **20STCV26635**
    all others similarly situated,
14                                               **CLASS ACTION COMPLAINT FOR:**
                    Plaintiff,
15                                               (1) Violation of Bus. & Prof. Code §§ 17200,
          v.                                         *et seq.* (Unfair Competition Law)
16                                               (2) Violation of Bus. & Prof. Code §§ 17500,
    NURTUR, LLC, an Ohio limited liability           *et seq.* (False Advertising Law)
17  company; NURTUR LOS ANGELES, LLC,            (3) Violation of Civil Code §§ 1750, *et seq.*
    an Ohio limited liability company; and           (Consumer Legal Remedies Act)
18  DOES 1 to 50, inclusive,                     (4) Breach of Written Contract
                                                 (5) Breach of Implied Covenant of Good Faith
19                  Defendants.                       and Fair Dealing
                                                 (6) Intentional Misrepresentation
20                                               (7) Negligent Misrepresentation
                                                 (8) Concealment
21                                               (9) False Promise
                                                 (10) Failure to Pay Wages and Overtime Labor
22                                                    Code §§ 510, 1182.12, 1194, 1194.2, 1197
                                                 (11) Meal-Period Liability under Labor Code §
23                                                    226.7
                                                 (12) Rest-Break Liability under Labor Code §
24                                                    226.7
                                                 (13) Violation of Labor Code § 226(a)
25                                               (14) Violation of Labor Code §§ 201, *et seq.*
                                                 (15) Penalties Pursuant to Labor Code § 2699, *et
26                                                    seq.*

27                                                              **By Fax**
                                                 **DEMAND FOR JURY TRIAL**
28

_____

                    CLASS ACTION COMPLAINT AND JURY DEMAND

                                                      **Exhibit A, page 21**

Plaintiff Ashley Mays (hereinafter, "Plaintiff") complains of defendants Nurtur, LLC, Nurtur Los Angeles, LLC (collectively "Nurtur"), dba Aveda Institute Los Angeles ("Aveda") and Does 1 to 50, inclusive, as follows:

## NATURE OF THE ACTION

1.      This action arises from Nurtur's exploitation of Californians who sought to better their lives by attending a vocational school based on promises that they would receive an "industry-leading education" providing the foundation for a successful career in esthetics and cosmetology.

2.      Plaintiff and other former students of Nurtur's Aveda Institute Los Angeles were deceived into paying thousands of dollars – most of which came in the form of tax-backed Title IV funds – to attend Nurtur's supposedly elite beauty school.  To attract these students Nurtur falsely represented the quality of its educational programs and its job placement rate, among other things.

3.      State and federal law requires postsecondary schools like Aveda Institute Los Angeles to truthfully disclose such information to students so that they can make informed decisions about whether to attend such programs.  By failing to disclose this material information to prospective students, Nurtur was able to enroll hundreds of students and secure millions of dollars in federal financial aid.

4.      In hindsight, Nurtur's efforts to hide its poor performance are unsurprising, for the school failed to deliver on even basic statutory requirements.  California regulates cosmetology and esthiology programs operating in this state, requiring the completion of minimum clock hours and performance of specific practical operations before students may take the state licensing examination.  Nurtur, however, falsely certifies the completion of these requirements to California authorities.

5.      Students received little to no technical instruction and performed the same basic operations over and over.  Worse, much of the students' time was spent on routine, menial tasks outside the educational experience. In effect, Nurtur's "students" functioned as an unpaid workforce who ran the school and serviced Nurtur's paying customers while receiving no compensation in return.

///

1

CLASS ACTION COMPLAINT AND JURY DEMAND

Exhibit A, page 22

6.      In short, the Aveda Institute Los Angeles was little more than a diploma mill for rubber-stamping certifications to California authorities so that students could qualify for the state licensing exam, all while providing a worthless education during which students performed uncompensated work.

7.      Because of the flagrant nature of these violations, this action seeks broad relief, including but not limited to damages, restitution, unpaid wages and overtime, penalties, and interest, as well as declaratory and injunctive relief, on behalf of California consumers.

### PARTIES

8.      At all times mentioned herein Nurtur Los Angeles, LLC is and was an Ohio limited liability company with its principal place of business at 10935 Weyburn Avenue, Los Angeles, CA 90024, where it operates a beauty school called Aveda Institute Los Angeles.

9.      At all times mentioned herein Nurtur, LLC is and was an Ohio limited liability company that operates a beauty school called Aveda Institute Los Angeles located at 10935 Weyburn Avenue, Los Angeles, CA 90024.

10.      At all times mentioned herein Plaintiff was and is a resident of the State of California.

11.      The true names and capacities, whether individual, corporate, associate, or whatever else, of the defendants sued herein as Does 1 to 50, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed and believes and thereon alleges that each of defendants designated herein as Does is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Does when their identities become known.

12.      Plaintiff is informed and believes and thereon alleges that each defendant acted in all respects pertinent to this action as the employee, agent, partner, alter-ego, and/or joint venturer of the other defendants; that defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto; and that the acts of each defendant are legally attributable to the other defendants.

///

2

CLASS ACTION COMPLAINT AND JURY DEMAND

Exhibit A, page 23

13.     Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5 because the obligations giving rise to liability occurred in the County of Los Angeles, State of California.

## BACKGROUND

14.     Nurtur owns and operates an esthetician and cosmetology school called Aveda Institute Los Angeles located at 10935 Weyburn Avenue, Los Angeles, CA 90024.

15.     To become an esthetician or cosmetologist, candidates must complete substantial coursework before taking required state licensure exams.  Cal. Bus. & Prof. Code § 7317.

16.     In California, students in esthiology, for example, must complete a course in skin care consisting of 600 hours of technical and practical instruction.  Cal. Bus. & Prof. Code § 7324; Cal. Code Regs. § 950.3.

17.     The regulations specify how much technical and practical instruction students must receive before taking their examination.  Required topics include "Manual, Electrical and Chemical Facials (70 Hours of Technical Instruction and 140 Practical Operations)," "Laws and Regulations (10 Hours of Technical Instruction)," "Health and Safety Considerations (40 Hours of Technical Instruction)," "Disinfection and Sanitation (10 Hours of Technical Instruction)," "Anatomy and Physiology (15 Hours of Technical Instruction)," "Eyebrow Beautification (25 Hours of Technical Instruction and 50 Practical Operations)," and "Make-up (20 Hours of Technical Instruction and 40 Practical Operations)."

18.     Nurtur offers courses putatively intended to fulfill these requirements.  Nurtur claims to provide "industry-leading education"[1] with an emphasis on "high-touch techniques using high-tech delivery during spa clinic treatments."[2]

19.     "Our educators are the best in the business, with the tools and knowledge to help you succeed. We'll provide the foundational knowledge, practical training and business-building skills you need[.]"[3]

///

---

[1] https://nurturavedainstitutes.com/about-us/
[2] https://nurturavedainstitutes.com/programs/
[3] https://aveda.edu/why-aveda/

3

CLASS ACTION COMPLAINT AND JURY DEMAND

20.     "Our faculty is a skilled team of experienced instructors with knowledge of classic and contemporary techniques. Instructors have met program licensing requirements and are trained in all aspects of hair, skin and nail esthetics, body care and related subjects."[4] "Our highly trained educational team and administrative support staff are dedicated to providing you with the skills necessary to be successful in the classroom and as you begin your career."[5]

21.     "When you graduate you will be prepared for a profitable and fulfilling career in the beauty industry"[6] and be "ready to succeed."[7]

22.     Nurtur represents that its curriculum will allow students "to learn the technical, personal and business skills necessary to work in a professional salon environment."[8] "With the skills you learn at an Aveda Institute, you'll be prepared to run your own business, work backstage at Fashion Week and provide caring, complete service for your guests."[9]

23.     Nurtur promises students instruction from a "skilled team of experienced instructors" who are "the best in the business, with the tools and knowledge to help you succeed"[10] and that "have met program licensing requirements and are trained in all aspects of hair, skin and nail esthetics, body care and related subjects."[11]

24.     Nurtur also misleadingly states that Nurtur is located "on the exciting UCLA campus,"[12] thus suggesting affiliation with UCLA, when in fact the Aveda Institute is a for-profit vocational "school" which, at the time Plaintiff attended, was situated in between Jerry's Famous Deli and Taco Bell.

25.     Nurtur's programs are not cheap. The total cost for Nurtur's cosmetology program is $27,748.05 and the total cost for its esthetician program is $16,007.25.[13]

26.     Unfortunately, Nurtur failed to live up to expectations because students received little to no instruction.

---

[4] https://nurturavedainstitutes.com/los-angeles-consumer-information/#1531421748651-4b91cbf7-6bc7
[5] https://nurturavedainstitutes.com/wp-content/uploads/AILA-Course-Catalog.pdf
[6] https://nurturavedainstitutes.com/about-us/
[7] https://nurturavedainstitutes.com/programs/
[8] https://nurturavedainstitutes.com/programs/
[9] https://aveda.edu/why-aveda/
[10] https://aveda.edu/why-aveda/
[11] https://nurturavedainstitutes.com/los-angeles-consumer-information/#1531421748651-4b91cbf7-6bc7
[12] https://nurturavedainstitutes.com/los-angeles/
[13] https://nurturavedainstitutes.com/wp-content/uploads/AILA-Course-Catalog.pdf

4

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 25**

27.     In Plaintiff's class, for example, one instructor was habitually absent in order to undergo and recover from breast augmentation surgery and was regularly observed arranging online dates during class time, and the other instructor had no field experience and could not demonstrate the required operations because her arm was injured and in a sling.

28.     The majority of the time students did not receive the technical instruction described in 16 Cal. Code Regs. § 950.3; they were forced to learn on their own through YouTube videos or were idle.

29.     This forced autodidacticism is not what students paid thousands of dollars for, and it has its limits.  For example, California requires esthiology students to receive instruction on and perform electrical facials, but Nurtur failed to instruct students on this procedure, as required by statute.

30.     Nurtur's substandard instruction violates accreditor requirements, which requires the institution to employ "an instructional staff that is fully qualified and of adequate size to fulfill the objectives of the educational courses and/or program(s) regardless of mode of delivery."[14]

31.     Moreover, Nurtur fails to accurately disclose job placement rates to would-be students.

32.     The Department of Education (DOE) regulates vocational programs that offer federal financial assistance, and schools are required to comply with federal regulations to be eligible to participate in financial assistance programs under the Higher Education Act (HEA).  *See* 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14(a).  To participate, schools sign a program participation agreement (PPA) certifying compliance with regulatory requirements.  *Id.*

33.     Nurtur receives federal funds under the HEA and thus entered into a PPA certifying compliance with DOE regulations.

34.     Moreover, to receive federal funds, Nurtur must be accredited by the National Accrediting Commission of Career Arts & Sciences (NACCAS), *see* 20 U.S.C. § 1002(b)(1)(E), which requires compliance with licensure requirements in the state where the institution is located.[15] Accreditation is also required under California law.  *See* Cal. Educ. Code § 94890.

---

[14] *See* 2019 NACCAS Handbook, Standard II, p. 7, available at http://naccas.org/naccas/naccas-handbook
[15] *See* 2019 NACCAS Handbook, pp. 13, 62 available at http://naccas.org/naccas/naccas-handbook

5

CLASS ACTION COMPLAINT AND JURY DEMAND

Exhibit A, page 26

35.      Under DOE regulations Nurtur is required to disclose job placement rates to prospective students. *See* 20 U.S.C. § 1094(a)(8) (requiring provision of most recent job placement rates to students); 34 C.F.R. § 668.412(a)(8).

36.      Moreover, Aveda's accreditor, NACCAS, requires Nurtur to maintain a job placement rate of at least 60 percent. An institution must maintain compliance with NACCAS's Standards and Criteria – including minimum job placement rates – to maintain accreditation status.[16]

37.      As a program eligible to receive Title IV funds, Nurtur must meet the requirements of its accrediting agency. 20 U.S.C. § 1094(a)(21).

38.      Nurtur failed to meet accreditor job placement requirements for both its esthetician and cosmetology programs and the required placement rates under the federal regulations.[17]

39.      Nurtur also failed to provide required job placement disclosures to students or otherwise obscured its job placement disclosures.

40.      In advertising materials Nurtur states that it "consistently exceed[s] [a]ccreditor requirements for placement of 60% by currently achieving 74%."[18] *See also* Course Catalog, which reports job placement to be 77.99%.[19]

41.      But Nurtur's own statistics for this time period show that only 38 percent of students find jobs in their field after graduation, and many of these jobs are part-time.[20]

42.      Nurtur did not provide this required information. Rather, the job placement disclosure provided to Plaintiff and other prospective students was dated and did not include available 2017 or later data showing Nurtur's low job placement rates.

43.      Indeed no data whatsoever was provided to Plaintiff or putative class members for 2017 or later, including on-time completion rates and gainful employment disclosures that Nurtur was required to provide.

///

---

[16] *See* NACCAS 2019 Handbook, Section 1.5(a)(7).
[17] *See* NACCAS 2019 Handbook, Standard 1, D5 (requiring 60% job placement rate), available at http://naccas.org/naccas/naccas-handbook; 34 C.F.R. § 668.8(e)(1)(ii).
[18] https://aveda.edu/career-paths/esthetician-school/
[19] https://nurturavedainstitutes.com/wp-content/uploads/AILA-Course-Catalog.pdf
[20] https://nurturavedainstitutes.com/wp-content/uploads/2019/05/2017-data-AILA-Esthetician-SPFS-FINAL-5-13-19.pdf

6

CLASS ACTION COMPLAINT AND JURY DEMAND

44.     These disclosures are material to consumers because they include information upon which a reasonable person would rely when deciding whether to attend a vocational school such as Nurtur, and this is precisely why the state law requires vocational schools to provide such information to prospective students.

45.     Moreover, the practical operations that students performed did not serve an educational purpose; rather they benefited Nurtur.

46.     Members of the public can visit the Aveda Institute to purchase esthetician and cosmetology treatments (e.g., haircut, facial, color, hair removal) performed by students.[21]  These services are identical to treatments a customer would receive at a salon.

47.     Nurtur even offers customers monthly facial or blowout memberships, entitling customers to a certain number of treatments per month.[22]

48.     Students perform these services but do not receive compensation or gratuities therefor.

49.     Despite the diversity of cosmetology services available to the public, students generally performed the same operations over and over again.  For instance, most of the facials Plaintiffs performed were basic facials.

50.     Despite Nurtur's representations,[23] instructors did not supervise these operations, or provide instruction or evaluation either before or after the operations.[24]

51.     Moreover, students performed repetitive and menial tasks, including but not limited to doing the laundry for the entire school and cleaning workstations and workrooms.

52.     Nurtur profited from this work.  Not only did Plaintiff and other students pay handsomely to attend Aveda Institute, but Nurtur also received money from customers who received services performed entirely by students.

///

///

---

[21] https://nurturavedainstitutes.com/los-angeles-service-menu/
[22] *Id.*
[23] https://nurturavedainstitutes.com/programs/; http://nurturavedainstitutes.com/los-angeles-service-menu/
[24] *See* 2019 NACCAS Handbook, Standard VI, A9 p. 13, available at http://naccas.org/naccas/naccas-handbook ("Each course or program provides supervised instruction in the applicable skills and competencies.").

7

CLASS ACTION COMPLAINT AND JURY DEMAND

53.     In effect, students functioned as an unpaid workforce that improved Nurtur's bottom line by providing routine and sometimes menial job duties for paying customers, without receiving the promised and paid-for instruction.

54.     California law requires cosmetology and esthetician programs to satisfy specific minimum clock-hour requirements. *See* Cal. Bus. & Prof. Code §§ 7362.5, 7364, 7365, 7366; 16 Cal. Code Regs. §§ 950.1-5; *see also* 34 C.F.R. § 668.8(d).  NACCAS, Nurtur's accreditor, also requires compliance with these clock-hour requirements.

55.     Nurtur falsely represents that students receive hundreds of hours of technical and practical instruction that Nurtur does not actually provide.

56.     Nurtur provides no instruction for the majority of the time.  In the classroom students are left to their own devices without any instruction whatsoever.

57.     Moreover, students do not receive instruction for practical operations but do the same repetitive tasks again and again without supervision or evaluation from instructors, or else perform routine, menial, non-educational tasks that should not be counted toward the completion of students' clock-hour requirements.

58.     However, Nurtur includes time that Plaintiff and other students spend on these tasks as part of the clock-hour requirements to enable students to qualify for state licensing exams.  Nurtur then falsely certifies to the California Bureau for Private Postsecondary Education and NACCAS compliance with clock-hour requirements.

59.     In sum, Nurtur violates 34 C.F.R. §§ 668.72 and 668.74, and its own accreditor's standards,[25] by misrepresenting, *inter alia*, the number, availability, and qualifications, including training and experience, of its faculty and other personnel; its location (allegedly on the UCLA campus); employability of graduates, including job placement rates; and the appropriateness of its courses and programs to the employment objectives that it states its programs are designed to meet.

60.     Nurtur's misconduct has real consequences on students like Plaintiff, who had to take time off from work to attend Nurtur's esthetician program, and lost income as a result.

///

---

[25] *See* NACCAS 2019 Handbook, Policy IV.04 (stating that "[t]he catalogue … avoids false, misleading and exaggerated statements.").

8

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 29**

61.    To compensate for this loss of income, and pay for Nurtur's expensive program, Plaintiff, like 85 percent of other students,[26] applied for and received federal financial aid.[27]  Her loans are still in repayment.[28]

## CLASS ALLEGATIONS

62.    Plaintiff brings this action as a class action pursuant to California Code of Civil Procedure § 382 on behalf of the following classes:

> All citizens of the State of California who within the longest applicable limitations period attended Nurtur's esthetician or cosmetology programs in the State of California.

63.    Members of the classes, as described above, will be referred to as "class members." Excluded from the classes are:  (1) Nurtur, any entity or division in which Nurtur has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff and members of their immediate families. Plaintiff reserves the right to amend the above classes and to add additional subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

64.    This action has been brought and may properly be maintained as a class action under California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the class members are easily ascertainable.

**A.**    **Numerosity**

65.    Although the precise number of class members has not been determined at this time, Plaintiff estimates that the classes include hundreds of members and that the identity of such persons is readily ascertainable through Nurtur's business records.  Therefore it is reasonable that the class members are so numerous that joinder is impracticable, and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

///

---

[26] https://nurturavedainstitutes.com/wp-content/uploads/2019/05/2017-data-AILA-Esthetician-SPFS-FINAL-5-13-19.pdf

[27] Indeed, Aveda admits that 76 percent of its income for 2017 came from public funding.  *See* https://nurturavedainstitutes.com/wp-content/uploads/2019/05/2017-data-BPPE-Annual-Report-submitted-5-16-19.pdf

[28] https://collegescorecard.ed.gov/school/?469957-Aveda-Institute-Los-Angeles (reporting that typical debt after graduation is approximately $10,000).

9

**B.    Common Questions Predominate**

66.    There are questions of law and fact common to the classes that predominate over any questions affecting only individual putative class members.  Thus proof of a common set of facts will establish the right of each class member to recovery.  These common questions of law and fact include but are not limited to the following:

  a. Whether Nurtur misrepresented the number, availability, and qualifications, including training and experience, of its faculty and other personnel; its location; and the employability of graduates;

  b. Whether Nurtur's instruction failed to satisfy the clock-hour requirements for its esthetician and cosmetology programs by including routine, menial, non-educational tasks toward the completion of students' clock-hour requirements;

  c. Whether Nurtur falsely certified students' clock-hour requirements to its accreditor and the Bureau of Post-Secondary Education to enable students to qualify for state licensing exams;

  d. Whether Nurtur's job placement rates failed to meet minimum accreditor requirements;

  e. Whether Nurtur falsely represented its job placement rates to prospective students;

  f. Whether Nurtur failed to disclose job placement rates to prospective students;

  g. Whether Nurtur falsely advertised affiliation with the University of California, Los Angeles; and

  h. Whether Nurtur's representations were material to Plaintiff and putative class members;

**C.    Typicality**

67.    Plaintiff's claims are typical of the claims of class members.  Plaintiff viewed Nurtur's advertisements and promotional materials, received Nurtur's disclosures, and paid to attend the Aveda Institute Los Angeles.  Thus Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

///

CLASS ACTION COMPLAINT AND JURY DEMAND

**D.     Adequacy**

68.     Plaintiff will fairly and adequately represent and protect the interests of class members.   Counsel who represent Plaintiff and putative class members are experienced and competent in litigating consumer class actions.

**E.     Superiority of Class Action**

69.     A class action is superior to other available means for the fair and efficient adjudication of this controversy.   Individual joinder of putative class members is not practicable, and questions of law and fact common to class members predominate over any questions affecting only individual putative class members.   Each class member has been damaged and is entitled to recovery as a result of the violations alleged herein.   Moreover, because the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.   Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**

**BUS. & PROF. CODE SECTION 17200, *et seq.* (THE "UCL")**

70.     Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

71.     California's Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

72.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as an "unfair, deceptive, untrue or misleading" advertising. Cal Bus. & Prof Code § 17200.   A business practice need only meet one of the three criteria to be considered unfair

11

CLASS ACTION COMPLAINT AND JURY DEMAND

07/16/2020

1    competition.

2        73.    An unlawful business practice is anything that can properly be called a business

3    practice and that at the same time is forbidden by law.  A business act or practice is "unlawful"

4    under the UCL if it violates any other law.

5        74.    Nurtur violates the unlawful prong of the UCL by violating DOE regulations,

6    including 34 C.F.R. §§ 668.72 and 668.74, prohibiting Nurtur from misrepresenting the number,

7    availability, and qualifications, including training and experience, of its faculty and other personnel,

8    its location, and employability of graduates; by violating state and federal laws requiring the

9    completion of clock-hour requirements, including Cal. Bus. & Prof. Code §§ 7362.5, 7364, 7365,

10   7366, 16 Cal. Code Regs. §§ 950.1-5, *see also* 20 U.S.C. § 1094(a)(8); by violating state and federal

11   laws requiring minimum job placement rates and disclosure of job placement rates to prospective

12   students, including 34 C.F.R. §§ 668.412(a)(8), 668.8(d), 20 U.S.C. § 1002(b)(1)(E) (requiring

13   accreditation with agency that requires minimum job placement rate); and by violating California's

14   False Advertising Law (FAL), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, the Consumer Legal

15   Remedies Act (CLRA), Cal. Civ. Code § 1750, *et seq.*, and California Labor Code, as alleged below.

16       75.    A business act or practice is "unfair" under the Unfair Competition Law if the

17   reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the

18   harm to the alleged victims.

19       76.    Nurtur violates the unfair prong of the UCL by charging Plaintiff and putative class

20   members tuition for a course of study in esthetics or cosmetology but failing to provide competent

21   instructors, failing to provide requisite instruction, failing to satisfy clock-hour requirements, falsely

22   certifying clock-hour requirements, and failing to supervise or evaluate practical operations such

23   that Plaintiff and putative class members were effectively deprived of the education for which they

24   paid substantial consideration.

25       77.    Nurtur effectively provided students with a worthless education that merely rubber-

26   stamped clock-hour requirements so that students could qualify for the state licensing examination

27   without providing the promised instruction that would prepare them for a career in esthetics or

28   cosmetology.

CLASS ACTION COMPLAINT AND JURY DEMAND

Exhibit A, page 33

78.     Worse, Nurtur used its students as an unpaid workforce to perform treatments to paying customers and to perform routine, repetitive, menial, and non-education tasks that would normally be provided by regular employees.  Nurtur retained the value from these treatments performed by its "students" to salon customers without paying students wages and, on the contrary, charging hefty tuition (which students almost always had to take out loans to pay for) in order to provide free labor.  In this way, Nurtur obtained a substantial advantage over competitors that paid for the labor it took to run their businesses and did not extract "tuition" from their employees.

79.     Any utility for Nurtur's conduct is outweighed by the gravity of the consequences to Plaintiff and class members because the conduct offends public policy.  Through its unfair acts and practices, Nurtur improperly obtained, and continues to obtain, money from Plaintiff and the putative class.  Plaintiff requests that Nurtur restore this money to Plaintiff and all class members and cease violating the UCL.  Without such relief, Plaintiff and the putative class will be irreparably harmed.

80.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

81.     Nurtur violates the fraudulent prong of the UCL because it falsely represents that it provides an "industry-leading education" and staffs its institute with sufficient and competent instructors to enable students to begin a successful career in esthetics or cosmetology when, in fact, it provides little to any technical instruction; provides inexperienced, inept, or entirely absent instructors; misrepresents or fails to provide job placement rates; and falsely certifies clock-hour requirements without providing the underlying instruction to literally rubber-stamp student's Proof of Training Document required by the Board of Barbering, Cosmetology, and Electrology as a prerequisite for examination.  Nurtur has duped Plaintiff and putative class members into paying thousands of dollars in tuition to attend Aveda Institute when Nurtur actually used them as an unpaid workforce performing routine, repetitive, menial, and non-educational services for paying customers of Nurtur's salon without receiving the promised instruction.

82.     Through its fraudulent acts and practices, Nurtur has improperly obtained money from Plaintiff and the putative class.  Plaintiff requests that this Court order Nurtur to restore this

13

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 34**

1  money to Plaintiff and the putative class and to enjoin Nurtur from continuing to violate the UCL.

2       83.  As a result of Nurtur's conduct described herein and its willful, reckless, and/or

3  grossly negligent violations of California Business & Professions Code § 17203, Plaintiff and

4  putative class members have lost money or property and suffered harm, as described herein.

5       84.  Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order

6  enjoining Nurtur from continuing to engage in the unfair and unlawful conduct described herein and

7  for the disgorgement of all ill-gotten profits.

8  **SECOND CAUSE OF ACTION**

9  **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

10  **BUS. & PROF. CODE SECTION 17500, *et seq.* (THE "FAL")**

11       85.  Plaintiff hereby incorporates by reference the allegations contained in this

12  Complaint.

13       86.  The California False Advertising Law prohibits unfair, deceptive, untrue, or

14  misleading advertising, including but not limited to false statements as to worth, value, and former

15  price.

16       87.  As alleged above, Nurtur engages in unfair, deceptive, and misleading advertising to

17  consumers by misrepresenting the number, availability, and qualifications, including training and

18  experience, of its faculty and other personnel; its location (allegedly on the UCLA campus); and

19  employability of graduates, including job placement rates.

20       88.  Nurtur also misrepresents that it provides an education intended to satisfy clock-hour

21  requirements sufficient to qualify students for the state licensure examination because it fails to

22  provide technical and practical instruction and requires students to perform repetitive, routine,

23  menial, and non-education tasks that should not count toward students' clock-hour requirements.

24  Nurtur does not sufficiently disclose that students will be required to engage in these tasks.

25       89.  Through its unfair, deceptive, and misleading acts and practices, Nurtur has

26  improperly obtained money from Plaintiff and the putative class. Plaintiff respectfully requests that

27  the Court restore these funds to Plaintiff and the putative class and enjoin Nurtur's continuing

28  violations of the FAL to prevent further irreparable harm to consumers.

14

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 35**

07/16/2020

## **THIRD CAUSE OF ACTION**

### **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT,**

### **CAL. CIVIL CODE SECTION 1750, *et seq.* (THE "CLRA")**

90.    Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

91.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA").

92.    Plaintiff and each member of the putative class are "consumers" within the meaning of Civil Code § 1761(d).

93.    Nurtur's cosmetology and esthetician programs are "transactions" within the meaning of Civil Code § 1761(e) because they are agreements between Plaintiff and putative class members and Nurtur for the provision of "goods" or "services" within the meaning of Civil Code § 1761(a).

94.    Nurtur has engaged in unfair methods of competition and unfair or deceptive acts or practices in transactions intended to result or that results in the sale or lease of goods or services to consumers, as follows:

a.  misrepresenting the source, sponsorship, approval, or certification of goods or services, in violation of Civ. Code § 1770(a)(2);

b.  misrepresenting the affiliation, connection, or association with, or certification by, another, in violation of Civ. Code § 1770(a)(3);

c.  representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, in violation of Civ. Code § 1770(a)(5);

d.  representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, in violation of Civ. Code § 1770(a)(7); and

e.  advertising goods or services with intent not to sell them as advertised, in violation of Civ. Code § 1770(a)(9).

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 36**

95.     As a result of these acts and practices, Plaintiff and the putative class were damaged in that Nurtur's unlawful and misleading acts and practices affected the decisions of Plaintiff and the putative class to attend Nurtur's esthetician and cosmetology programs.

96.     Pursuant to California Civil Code § 1780, Plaintiff, on behalf of herself and the putative class, seeks to recover damages and restitution, as well as injunctive relief prohibiting Nurtur from continuing to engage in the unlawful and deceptive methods, acts, and practices alleged above.

97.     The aforementioned acts of Nurtur were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff and class members, thereby justifying an award of punitive and exemplary damages.

98.     Pursuant to Civil Code § 1782, on October 7, 2019, Plaintiff sent Nurtur a letter, by certified mail, in which she outlined the foregoing violations of the CLRA and requested that Nurtur remedy these violations as to Plaintiff and the class.  Nurtur has not agreed to correct, repair, replace, or otherwise rectify the violations alleged herein within thirty (30) calendar days after Nurtur's receipt of Plaintiff's letter.  Therefore Plaintiff is entitled to damages, including actual, statutory, and punitive damages, on behalf of herself and the putative class.

## FOURTH CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT

99.     Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

100.    Plaintiff and each student entered into contracts with Nurtur whereby Nurtur promised to provide quality instruction in accordance with regulatory requirements in exchange for a substantial tuition.[29]

101.    Nurtur breached this contract, however, by failing to provide instruction or even instructors qualified to provide instruction, falsely certifying the completion of required coursework to the state to qualify students for licensure, and requiring students instead to perform repetitive,

---

[29] *See* NACCAS 2019 Handbook, Policy IV.03 (stating "[a] contractual relationship exists between an institution and its applicant or student.  The terms of such agreement are considered to be of substantial importance and should be clearly understood by all concerned parties, including unsophisticated applicants and parents.").

1  menial tasks for paying customers.

2      102.   As a direct and proximate result of Nurtur's breach, each student was damaged in the

3  amount of the paid tuition and interest accruing on loans in repayment, as well as loss of income

4  from being wholly unprepared to practice as licensed cosmetologists and estheticians, as promised.

## FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

7      103.   Plaintiff hereby incorporates by reference the allegations contained in this

8  Complaint.

9      104.   Plaintiff and putative class members entered into contracts with Nurtur, as alleged

10  hereinabove.  Implied in these contracts was a covenant of good faith and fair dealing by each party

11  agreeing not to do anything that would deprive the other parties of the benefits of the contract,

12  including an implied covenant to sufficiently staff the school to provide quality instruction

13  consistent with regulatory and accreditor requirements.

14      105.   Plaintiff and putative class members have performed all conditions, covenants, and

15  promises required of them under the contract, i.e., they have paid Nurtur tuition.

16      106.   Nurtur breached the implied covenant of good faith and fair dealing by failing to

17  sufficiently staff the school to provide quality instruction consistent with regulatory and accreditor

18  requirements, failing to provide technical instruction, failing to supervise and evaluate practical

19  operations, and falsely certifying the completion of clock-hour requirements.

20      107.   As a direct and proximate cause of Nurtur's breach of the implied covenant of good

21  faith and fair dealing, Plaintiff and putative class members have been damaged, as alleged above, in

22  an amount in excess of the jurisdictional limits of this Court to be proven at the time of trial.

## SIXTH CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

25      108.   Plaintiff hereby incorporates by reference the allegations contained in this

26  Complaint.

27      109.   Nurtur made representations of fact regarding the number, availability, and

28  qualifications, including training and experience, of its faculty and other personnel; the location of

17

Exhibit A, page 38

1 | its campus and affiliation; and the employability of graduates, including job placement rates; and its

2 | certification of clock-hour requirements.

3 | 110. Nurtur's representations with regard to these matters were false, as alleged above.

4 | 111. Nurtur knew that these representations were false at the time Nurtur made them.

5 | 112. Nurtur intended that Plaintiff and members of the putative class should rely on its

6 | representations whether to attend Nurtur's programs and take the state licensing examination.

7 | 113. Plaintiff and members of the putative class reasonably relied on Nurtur's

8 | representations.

9 | 114. Plaintiff and members of the putative class were harmed by Nurtur's representations

10 | in that they paid money to attend Nurtur's programs and to take the state licensing exam, and in that

11 | they performed free labor outside the educational experience.

12 | 115. Nurtur's representations were a substantial factor in causing Plaintiff and members

13 | of the putative class to attend Nurtur's programs and to take the state licensing exam

14 | 116. Nurtur's conduct was malicious, oppressive, and fraudulent in that it was intended to

15 | cause Plaintiff and putative class members injury, namely, the deprivation of money, and was done

16 | with a willful and knowing disregard of the rights of Plaintiff and putative class members and

17 | subjected Plaintiff and putative class members to cruel and unjust hardship in knowing disregard of

18 | their rights, thereby justifying an award of putative or exemplary damages.

19 | 117. Plaintiff and members of the putative class suffered an ascertainable loss and are

20 | entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

21 | **SEVENTH CAUSE OF ACTION**

22 | **NEGLIGENT MISREPRESENTATION**

23 | 118. Plaintiff hereby incorporates by reference the allegations contained in this

24 | Complaint. Plaintiff pleads this cause of action in the alternative to the foregoing cause of action.

25 | 119. Nurtur made representations of fact regarding the number, availability, and

26 | qualifications, including training and experience, of its faculty and other personnel; the location of

27 | its campus and affiliation; the employability of graduates, including job placement rates; and its

28 | certification of clock-hour requirements.

07/16/2020

120. Nurtur had no reasonable grounds for believing that these representations were true.

121. Nurtur intended that Plaintiff and members of the putative class should rely on its representations when deciding to attend Nurtur's programs and take the state licensing examination.

122. Plaintiff and members of the putative class reasonably relied on Nurtur's representations.

123. Plaintiff and members of the putative class were harmed by Nurtur's representations in that they paid money to attend Nurtur's programs and to take the state licensing exam, and in that they performed free labor outside the educational experience.

124. Nurtur's representations were a substantial factor in causing Plaintiff and members of the putative class to attend Nurtur's programs and to take the state licensing exam

125. Plaintiff and members of the putative class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### CONCEALMENT

126. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

127. Nurtur disclosed some facts to Plaintiff and putative class members but intentionally failed to disclose other facts, making the disclosure deceptive, namely, the number, availability, and qualifications, including training and experience, of its faculty and other personnel and the employability of graduates, including job placement rates.

128. Plaintiff and putative class members were unaware of the concealed facts.

129. Nurtur intended to deceive Plaintiff and putative class members by concealing the foregoing facts.

130. If Nurtur had sufficiently disclosed the omitted information Plaintiff and putative class members would have acted differently, including not attending Nurtur's programs or paying for the state licensing exam.

131. Nurtur intended that Plaintiff and members of the putative class should rely on its representations when deciding to attend Nurtur's programs and take the state licensing exam.

19

Exhibit A, page 40

132.   Plaintiff and members of the putative class reasonably relied on Nurtur's representations.

133.   Plaintiff and members of the putative class were harmed by Nurtur's representations in that they paid money to attend Nurtur's programs and to take the state licensing exam, and in that they performed free labor outside the educational experience.

134.   Nurtur's representations were a substantial factor in causing Plaintiff and members of the putative class to attend Nurtur's programs and to take the state licensing exam

135.   Nurtur's conduct was malicious, oppressive, and fraudulent in that it was intended to cause Plaintiff and putative class members injury, namely, the deprivation of money, and was done with a willful and knowing disregard of the rights of Plaintiff and putative class members and subjected Plaintiff and putative class members to cruel and unjust hardship in knowing disregard of their rights, thereby justifying an award of putative or exemplary damages.

136.   Plaintiff and members of the putative class suffered an ascertainable loss and are entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### FALSE PROMISE

137.   Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

138.   Nurtur made promises to Plaintiff and members of the putative class regarding the number, availability, and qualifications, including training and experience, of its faculty and other personnel; the location of its campus and affiliation; and the employability of graduates, including job placement rates; and its certification of clock-hour requirements.

139.   Nurtur did not intend to perform these promises when Nurtur made them.

140.   Nurtur intended Plaintiff and members of the putative class to rely on these promises when deciding whether to attend Nurtur's programs and take the state licensing examination.

141.   Plaintiff and putative class members reasonably relied on Nurtur's promises.

142.   Nurtur broke its promises to Plaintiff and putative class members in that Nurtur did not provide a sufficient number of qualified instructors to satisfy the clock-hour requirements to

20

CLASS ACTION COMPLAINT AND JURY DEMAND

1  become an esthetician or cosmetologist, let alone provide "industry-leading" instruction to enable

2  students to launch a successful career in the field; did not have any affiliation with UCLA or the

3  UCLA campus; and did not have the represented and requisite job-placement rates.

4  143.   Plaintiff and members of the putative class were harmed by Nurtur's representations

5  in that they paid money to attend Nurtur's programs and to take the state licensing exam, and in that

6  they performed free labor outside the educational experience.

7  144.   Nurtur's representations were a substantial factor in causing Plaintiff and members

8  of the putative class to attend Nurtur's programs and to take the state licensing exam.

9  145.   Nurtur's conduct was malicious, oppressive, and fraudulent in that it was intended to

10  cause Plaintiff and putative class members injury, namely, the deprivation of money,  and was done

11  with a willful and knowing disregard of the rights of Plaintiff and putative class members and

12  subjected Plaintiff and putative class members to cruel and unjust hardship in knowing disregard of

13  their rights, thereby justifying an award of putative or exemplary damages.

14  146.   Plaintiff and members of the putative class suffered an ascertainable loss and are

15  entitled to relief and compensatory and punitive damages, in an amount to be determined at trial.

16  ## TENTH CAUSE OF ACTION

17  ### FAILURE TO PAY WAGES AND OVERTIME

18  ### LABOR CODE §§ 510, 1182.12, 1194, 1194.2, 1197

19  147.   Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

20  148.   As alleged above, Plaintiff and students performed routine, repetitive, menial, and

21  non-education activity for Nurtur, including but not limited to laundry for the entire school and

22  cleaning workstations and workrooms; they also repetitively performed basic services and

23  treatments without supervision, instruction, or evaluation beyond what was required to complete

24  their coursework or qualify for their licensing exams.

25  149.   Customers visiting Nurtur's salon paid Nurtur for services provided by these

26  students, who in some respects displaced regular employees of Nurtur, which would have otherwise

27  had to employ such employees in greater number or for longer hours.

28  ///

**Exhibit A, page 42**

150.   However, Plaintiff and putative class members did not receive at least the minimum wage for all hours worked, in violation of California Labor Code §§ 510, 1182.12, 1194, 1194.2, and 1197.

151.   Upon information and belief, Plaintiff and putative class members sometimes performed work in excess of eight hours a day or forty hours a week, thus entitling them to overtime at prevailing overtime rates under Labor Code § 510, which they did not receive.

152.   Nurtur's failure to pay compensation in a timely fashion also constituted a violation of California Labor Code § 204, which requires that all wages shall be paid semimonthly.  From four (4) years prior to the filing of this lawsuit to the present, in direct violation of that provision of the California Labor Code, Nurtur has failed to pay all wages earned by Plaintiff and putative class members.  Each such failure to make a timely payment of compensation to Plaintiff and putative class members constitutes a separate violation of California Labor Code § 204.

153.   Plaintiff and putative class members have been damaged by these violations of California Labor Code §§ 204, 510, 1182.12, 1194, and 1197, and the relevant orders of the Industrial Welfare Commission.

154.   Consequently, pursuant to California Labor Code §§ 204, 510, 1182.12, 1194, and 1197 (and the relevant orders of the Industrial Welfare Commission), Nurtur is liable to Plaintiff and putative class members for the full amount of all their unpaid wages and overtime, with interest, plus their reasonable attorneys' fees and costs.

155.   Pursuant to California Labor Code § 1194.2, Plaintiff and putative class members are also entitled to liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

### ELEVENTH CAUSE OF ACTION

### MEAL-PERIOD LIABILITY UNDER LABOR CODE § 226.7

156.   Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

157.   Plaintiff and putative class members regularly worked greater than five (5) hours and greater than ten (10) hours.  Pursuant to Labor Code § 512 an employer may not employ someone for a shift of more than five (5) hours without providing him or her with a meal period of not less

than thirty (30) minutes or for a shift of more than ten (10) hours without providing him or her with a second meal period of not less than thirty (30) minutes.

158.    Nurtur failed to provide Plaintiff and putative class members with meal periods as required under the Labor Code.  Because Nurtur did not consider Plaintiff and putative class members employees, it did not provide the required meal periods for work periods exceeding five (5) hours or ten (10) hours.

159.    Moreover, Nurtur failed to compensate Plaintiff and putative class members with an additional hour of pay at their regular rate of compensation for each day on which meal periods were not provided or were inadequately provided, as required under Labor Code § 226.7.

160.    Therefore, pursuant to Labor Code § 226.7, Plaintiff and putative class members are entitled to damages in an amount equal to one (1) hour of pay at their regular rate of compensation for each day on which meal periods were not provided or deficiently provided, in an amount to be proven at trial.

### TWELFTH CAUSE OF ACTION

### REST-BREAK LIABILITY UNDER LABOR CODE § 226.7

161.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

162.    Plaintiff and putative class members consistently worked consecutive four (4) hour shifts.  Pursuant to the Labor Code and the applicable IWC Wage Order, Plaintiff and putative class members were entitled to paid rest breaks of not less than ten (10) minutes for each work period of four (4) hours or major fraction thereof.

163.    Nurtur failed to provide Plaintiff and putative class members with timely rest breaks of not less than ten (10) minutes per work period of four (4) hours or major fraction thereof.

164.    Moreover, Nurtur did not compensate Plaintiff and putative class members with an additional hour of pay at each their regular rate of compensation for each day on which Nurtur failed to provide them with adequate rest breaks, as required under Labor Code § 226.7.

165.    Therefore, pursuant to Labor Code § 226.7, Plaintiff and putative class members are entitled to damages in an amount equal to one (1) hour of pay at their regular rate of compensation for each day worked without the required rest breaks, in an amount to be proven at trial.

23

CLASS ACTION COMPLAINT AND JURY DEMAND

## THIRTEENTH CAUSE OF ACTION

### VIOLATION OF LABOR CODE § 226(a)

166. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

167. California Labor Code § 226(a) requires an employer to furnish each of his or her employees with an accurate, itemized statement in writing showing the gross and net earnings, total hours worked, and the corresponding number of hours worked at each hourly rate; these statements must be appended to the detachable part of the check, draft, voucher, or whatever else serves to pay the employee's wages; or, if wages are paid by cash or personal check, these statements may be given to the employee separately from the payment of wages; in either case the employer must give the employee these statements twice a month or each time wages are paid.

168. Nurtur failed to provide Plaintiff and putative class members with accurate itemized wage statements in writing, as required by the Labor Code because Nurtur did not consider them employees.

169. Nurtur's failure to comply with Labor Code § 226(a) was knowing and intentional in that Nurtur, prior to an alleged violation, has not adopted and is not in compliance with a set of policies, procedures, and practices that fully comply with Labor Code § 226.

170. As a direct and proximate cause of Nurtur's violation of Labor Code § 226(a), Plaintiff and putative class members suffered injury in that Nurtur failed to provide wage statements to Plaintiff and putative class members.

171. Pursuant to Labor Code §§ 226(a) and 226(e), Plaintiff and putative class members are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000). They are also entitled to an award of costs and reasonable attorneys' fees.

### FOURTEENTH CAUSE OF ACTION

### VIOLATION OF LABOR CODE §§ 201, *et seq.*

172. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

///

CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 45**

173. Plaintiff and putative class members are no longer employed by Nurtur; however, Nurtur failed to pay Plaintiff and putative class members all wages due and certain at the time of termination or within seventy-two (72) hours of resignation, in violation of Labor Code §§ 201, 202.

174. The wages withheld from Plaintiff and putative class members by Nurtur remained due and owing for more than thirty (30) days from the date of separation of employment.

175. Nurtur's failure to pay wages, as alleged above, was willful in that Nurtur knew wages to be due but failed to pay them; this violation entitles Plaintiff and putative class members to penalties under Labor Code § 203, which provides that an employee's wages shall continue until paid for up to thirty (30) days from the date they were due.

**FIFTEENTH CAUSE OF ACTION**

**CIVIL PENALTIES PURSUANT TO LABOR CODE § 2699, *et seq.***

176. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

177. Plaintiff brings this claim as a representative action on behalf of all current and former aggrieved employees of Nurtur.

178. Plaintiff is an aggrieved employee as defined under Labor Code § 2699(c) in that she suffered the violations alleged in this Complaint and was employed by the alleged violators, Nurtur.

179. Plaintiff seeks wages and penalties under Labor Code § 2699 for Nurtur's violation of all Labor Code provisions identified in this Complaint, including but not limited to Labor Code sections 226, 226.7, 201, 202, 203, 204, 510, 512, 558, 558.1, 1182.12, 1194, 1194.2, 1197, and Industrial Welfare Commission Wage Order 2-2001. These penalties shall be allocated as follows: 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the affected employees.

180. On or around June 9, 2020, Plaintiff gave written notice by online filing with the LWDA and by certified mail to Nurtur of the specific Labor Code provisions alleged to have been violated and paid the required filing fee. If the LWDA does not provide notice of its intent to investigate the alleged violations of the Labor Code provisions listed in Labor Code § 2699.5 that are identified in this Complaint within 65 calendar days of the postmark date of the aforesaid notice, or if Nurtur does not cure the violations of all Labor Code provisions other than those listed in Labor

1   Code § 2699.5 that are identified in this Complaint within 33 calendar days of the postmark date of

2   the aforesaid notice, Plaintiff will seek leave of this Court to file an amended complaint alleging

3   exhaustion of the statute's pre-filing requirements.

4   **PRAYER FOR RELIEF**

5       WHEREFORE, Plaintiff seeks judgment in her favor and damages against Nurtur based on

6   the following requested relief:

7       (a)     Actual damages;

8       (b)     Statutory damages;

9       (c)     Punitive damages;

10      (d)     Restitution;

11      (e)     Declarative, equitable, and injunctive relief;

12      (f)     Costs and reasonable attorneys' fees;

13      (g)     Pre- and post-judgment interest; and

14      (h)     Such other and further relief as may be necessary, just, and proper.

15  **JURY DEMAND**

16      Plaintiff hereby demands a jury trial on all issues so triable.

17

18  DATED:  July 9, 2020                          COUNSELONE, PC

19

20                                         By _____

21                                            Anthony J. Orshansky
                                              Alexandria R. Kachadoorian
22                                            Justin Kachadoorian

23                                            *Attorneys for Plaintiff Ashley Mays, on*
                                              *behalf of herself and others similarly*
24                                            *situated*

25

26

27

28

26
CLASS ACTION COMPLAINT AND JURY DEMAND

**Exhibit A, page 47**

### DECLARATION OF PLAINTIFF ASHLEY MAYS
### PURSUANT TO CAL. CIVIL CODE § 1780(d)

I, Ashley Mays, declare:

1.      I am over 18 years of age and a named plaintiff in this action.  I have personal knowledge of the facts herein, and if called upon to testify to the information contained in this Declaration, I could and would competently do so.

2.      The transaction that is the subject of this lawsuit occurred in Los Angeles County, State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _06 / 19 / 2020_____.

By: _____
                Ashley Mays

CLASS ACTION COMPLAINT AND JURY DEMAND   Exhibit A, page 48